## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

In re

**JULIA MARION WALL**,                    Case No. **16-60490-7**

      Debtor.

---

**JOAN SMITH, ESTATE OF
MERWIN SMITH, GREGORY
TRENT WALL,**

      Plaintiffs.                    Adv. No. **16-00050**

-vs-

**JULIA MARION WALL,**

      Defendant.

---

### MEMORANDUM OF DECISION

At Butte in said District this 24th day of March, 2017.

Pending in this Chapter 13 case and adversary proceeding are: (i) Defendant/Debtor Julia Marion Wall's (hereinafter "Julia" or "Debtor") combined Motion to Dismiss Smiths' complaint under Rule 12(b)(6) and Motion for Summary Judgment on her counterclaims for violation of the discharge injunction, filed on February 23, 2017 (Docket No. 42); and the (ii) Debtor's Objection to Proof of Claim No. 6 filed by Smiths in Debtor's Case No. 16-60490-13 (the "Dispositive Motions"). Joan Smith ("Joan") and the Estate of Merwin Smith (together hereinafter "Smiths") filed a brief in opposition. These matters were combined for trial and are addressed in this

1

Memorandum of Decision.

## INTRODUCTION

A pretrial status hearing was held in this adversary proceeding at Missoula on March 9, 2017.  The parties were represented by counsel.  Attorney Nik G. Geranios of Missoula appeared for the Debtor, and attorney Howard Toole ("Toole") of Missoula appeared representing the Plaintiffs.  Smiths requested and were granted two extensions of time to file Smiths' brief in opposition to the Dispositive Motions, which seek dismissal of Smiths' complaint under Rule 12(b)(6), Fed. R. Civ. P. (applicable in adversary proceedings under F.R.B.P. 7012(a)), for failure to state a claim upon which relief can be granted, and further seeks summary judgment on Debtor's counterclaims for violation of the discharge injunction of 11 U.S.C. § 524(a)(2).

The Court has reviewed the Dispositive Motions and Debtor's Objection to Proof of Claim No. 6, Smiths' Opposition to the Dispositive Motions, the Debtor's Statement of Uncontroverted Facts and briefs, supporting documents, and Smiths' opposition brief, and related submissions.  The pending Dispositive Motions and Objection to Proof of Claim are interrelated, and are ready for decision.  For the reasons set forth below, Debtor's Motion to Dismiss and Motion for Summary Judgment each will be granted, Smiths' claims for relief asserted in their First Amended Complaint ("FAC") will be dismissed, and Debtor's Objection to Proof of Claim No. 6 will be sustained by separate Orders.  Trial will be scheduled by future Order in this adversary proceeding for the limited purpose of determining the amount of damages to be awarded to the Debtor against the Smiths for their violations of the discharge injunction of § 524(a)(2).

## JURISDICTION

This Court has original and exclusive jurisdiction of Julia's Chapter 13 bankruptcy case under 28 U.S.C. § 1334(a).  In addition the Court has jurisdiction  in this adversary proceeding under § 1334(b) as Smiths' claims seeking exception of their debt from, and revocation of, Debtor's discharge arise in and are related to a case under Title 11, U.S.C.   The parties' pleadings agree that this Court has jurisdiction.

Smiths' claims seeking exception from Defendant's discharge and revocation of discharge are core proceedings under 28 U.S.C. §§ 157(b)(2)(I).  Debtor's counterclaims alleging violations of the discharge injunction are core proceedings under § 157(b)(2).  Debtor's Objection to Smiths' Proof of Claim No. 6 is a core proceeding under § 157 (b)(2)(B).

## BACKGROUND FACTS & PROCEDURAL HISTORY

Several facts are undisputed and can be verified by simply looking at the docket maintained by this Court in a prior case involving the Debtor.  Under Rule 201, Fed. R. Evid., the Court may take judicial notice of undisputed matters of public record, including documents on file in federal or state courts.  *Harris v. County of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012); *see Bennett v. Medtronic, Inc.*, 285 F.3d 801, 803 n.2 (9th Cir. 2002) ("[W]e 'may take notice of proceedings in other courts, both within and without the federal judicial systems, if those proceedings have a direct relation to matters at issue.'", quoting *United States ex rel. Robinson Rancheria Citizens Council v. Borneo*, 971 F.2d 244, 248 (9th Cir. 1992)).  The court may use judicially noticed facts to establish that a claim does not state a claim for relief.  *Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007).  The court also can take judicial notice of papers filed in related litigation, *Estate of Blue v. County of Los Angeles*, 120

F.3d 982, 984 (9ᵗʰ Cir. 1997), and papers filed in an underlying bankruptcy case are subject to judicial notice in related adversary proceedings. *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957-58 (9ᵗʰ Cir. 1989). At Debtor's request the Court took judicial notice of the dockets in this adversary proceeding, the Debtor's pending Chapter 13 case, and Julia's prior chapter 7 bankruptcy case, Case No. 12-60657-7 (the "Prior Bankruptcy Case").

### A. Debtor's Prior Bankruptcy Case.

On April 26, 2012, Julia, along with co-debtor, Gregory Trent Wall ("Gregory") filed a Chapter 7 bankruptcy petition commencing Case No. 12-60657-7. At the time of filing, Julia and Gregory were married. Joan Smith is Gregory's mother and Merwin Smith ("Merwin"), deceased, was Gregory's stepfather.

Prior to April 26, 2012, Gregory suffered a disabling injury and Joan and Merwin provided Gregory and Debtor financial assistance, including loans for various purposes, including: (i) funds to move from Sacramento, California, to the Bitterroot Valley in Montana in 2004 or 2005; (ii) funds to acquire a mobile home after they arrived in Montana; and (iii) funds to purchase real property in Montana. Debtor signed a note promising to repay Smiths the amount of $125,000. Debtor and Gregory made several payments on the indebtedness to Joan and Merwin for years. Ultimately, the balance increased to approximately $165,000 (the "Smith Debt"), prior to filing the Prior Case. The Smith Debt was not scheduled in the Prior Case.

Along with the Smith Debt, Gregory and Debtor also owed Joan and Mervin $750.00 in connection with a debt secured by a Honda 4 wheeler (the "Smith Secured Debt"). The Smith Secured Debt was included on Schedule D in the Prior Case. Schedule D incudes Joan's address as 175 Orr Loop Road, Darby, MT 59829. On their Statement of Intention Gregory and Julia

4

stated their intention to reaffirm the Smith Secured Debt.

The Bankruptcy Noticing Center ("BNC") mailed Joan the usual "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines" on April 28, 2012, at 175 Orr Loop Road, Darby, MT 59829[1]. The notice informed Joan of the meeting of creditors to be held on June 4, 2012. It also gave Joan notice of the August 3, 2012 deadline to object to the debtors' discharge or to challenge dischargeabiliity of certain debts. The notice included the following explanation of a "Discharge:

> The debtor is seeking a discharge of most debts, *which may include your debt*. A discharge means that you may never try to collect the debt from the debtor. If you believe that the debtor is not entitled to receive a discharge under Bankruptcy Code §727(a) or that a debt owed to you is not dischargeable under Bankruptcy Code §523(a)(2), (4), or (6), you must file a complaint — or a motion if you assert the discharge should be denied under §727(a)(8) or (a)(9) — in the bankruptcy clerk's office by the "Deadline to Object to Debtor's Discharge or to Challenge the Dischargeability of Certain Debts" listed on the front of this form. The bankruptcy clerk's office must receive the complaint or motion and any required filing fee by that deadline.

*See*, Dkt. 4 of Case No. 12-60657-7 (Emphasis added).

The notice instructed creditors not to file a proof of claim at that time, but that they would be sent another notice if it later appeared that assets would be available to pay creditors. Such a "Notice to File Claims" was issued by the Clerk of Court on June 5, 2012. It informed the creditors that they had until September 3, 2012 to file a Proof of Claim in order to share in distribution of assets "or be forever barred." The BNC mailed the Clerk's Notice to File Claims to Joan Smith at 175 Orr Loop Road, Darby, MT 59829, on June 7, 2012. Smiths did not file a Proof of Claim in the Prior Case. Neither did Smiths file a complaint seeking exception of the Smith Debt from the debtors' discharge in the Prior Case.

---

[1] 175 Orr Loop Road, Darby, MT 59829 is the Smiths' address listed on the docket of this adversary proceeding.

A discharge was entered in the Prior Case on August 6, 2012.  The discharge (Dkt. in

Case No. 12-60657-7) contains the following provisions on the back side:

**Collection of Discharged Debts**

The discharge prohibits any attempt to collect from the debtors a debt that has
been discharged.  For example, a creditor is not permitted to contact a debtor by
mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other
property, or to take any other action to collect a discharged debt from the debtors.
A creditor who violates this order can be required to pay damages and attorney's
fees to the debtor.

However, a creditor may have the right to enforce a valid lien, such as a mortgage
or security interest, against the debtors' property after the bankruptcy, if that lien
was not avoided or eliminated in the bankruptcy case.  Also, a debtor may
voluntarily pay any debt that has been discharged.

**Debts that are Discharged**

The chapter 7 discharge order eliminates a debtor's legal obligation to pay a debt
that is discharged.  *Most, but not all, types of debts are discharged if the debt
existed on the date the bankruptcy case was filed.* * * * *

**Debts that are Not Discharged.**

* * * *

g.  Some debts which were not properly filed by the debtor;
h.  Debts that the bankruptcy court specifically has decided or will decide in this
bankruptcy case are not discharged;
i.  Debts for which the debtor has given up the discharge protections by signing a
reaffirmation agreement in compliance with the Bankruptcy Code requirements
for reaffirmation of debts.

(Emphasis added).

The BNC served the discharge in the Prior Case by first class mail to Joan Smith at 175

Orr Loop Road, Darby, MT 59829, on August 8, 2012.  A final decree was entered closing the

Prior Case on November 18, 2013[2].  No request to revoke the discharge entered in the Prior Case

---

[2] Debtor filed a motion to reopen Case No. 12-60657-7 on February 22, 2017, which is pending.

was filed within one year of the entry of the discharge, or the date on which the Prior Case was closed.

**B. Debtor's 2016 Bankruptcy Filing.[3]**

On May 20, 2016, Debtor filed a voluntary Chapter 13 bankruptcy petition, Schedules and Statement of Financial Affairs ("SOFA") commencing Case No. 16-60490-13 (the "New Case"). On her SOFA, at paragraph 9, Debtor listed a collection action brought against her by Joan Smith and the Estate of Merwin Smith in the Montana Twenty-First Judicial District Court, Ravalli County, No. DV-13-371, which concluded in entry of a judgment. Paragraph 10 of the SOFA states that Julia's wages were garnished by Smith.

Notice of Julia's Chapter 13 case was sent by the BNC to Joan Smith and Estate of Merwin Smith at 175 Orr Loop, Darby, MT 59829-8624. The § 341(a) meeting of creditors was held. The Debtor appeared and testified. Joan Smith appeared at the meeting represented by counsel. Smith filed Proof of Claim No. 6 (the "Claim") in Debtor's New Case on August 15, 2016, asserting an unsecured non-priority claim in the amount of $88,832.57[4]. That Claim is premised on an order and judgment entered against Debtor and Gregory Wall in state court, Cause No. DV-13-371 on April 4, 2016 (the "State Court Judgment"). Debtor filed her Objection to the Claim on December 9, 2016 (the "Objection"), on the grounds that the Claim (i) was for a debt that was discharged in her prior bankruptcy case; and, (ii) because the filing of the Claim was a violation of the discharge injunction.

**C. This Adversary Proceeding**

---

[3] At some point after the filing of the Prior Case, but before filing the New Case, Debtor and Gregory separated and divorced. The divorce became final in 2014.
[4] The $88,832.57 amount of judgment represents the allocation to Debtor of a one-half share of her and Gregory's indebtedness to Smiths calculated by the state district court.

7

Smiths commenced this adversary proceeding by filing a "Complaint to Deny and Except Discharge" on August 16, 2016. The Complaint avers a claim for relief seeking exception of Smiths' claim from Debtor's discharge under 11 U.S.C. § 523(a)(2)(A), and further alleges that the New Case was filed in bad faith[5]. Among the allegations in the Complaint are allegations that Debtor committed fraud by promising Gregory to omit from the filing in their Prior Case, the Smith Debt and that they would continue to repay the Smith Debt after the bankruptcy filing. Smiths contend that Julia's representations to Gregory were false and were made with intent to deceive, and that they caused Smiths damages for which they seek exception from Julia's discharge.

Debtor filed an answer, affirmative defenses and counterclaims on December 13, 2016. Debtor denied the material allegations of the Complaint, and in particular Debtor denied inducing Gregory to file bankruptcy. She denied committing fraud or misrepresentations, and alleged that Smiths failed to plead fraud with particularity and are barred under various theories including laches and statute of limitations. Debtor's counterclaims allege: (i) violation of the discharge injunction when Smiths initiated the state court action to collect a discharged debt, and ultimately obtained the State Court Judgment; and (2) violation of the discharge injunction when Smiths filed the Claim, a claim premised on a discharged debt. Debtor requests actual damages, damage for emotional distress, punitive damages and attorney's fees and expenses for her counterclaims. Smiths filed an answer to Debtor's counterclaims on January 11, 2017. In their answer Smiths denied the material allegations and denied liability under Debtor's counterclaims.

---

[5]The Complaint does not contain a claim objecting to discharge under 11 U.S.C. 727. The prayer for a bad faith finding could have been made in the main Chapter 13 case either as a motion to dismiss pursuant to F.R.B.P. Rule 9014(a), or in an objection to confirmation.

In particular, Smiths denied that Julia's debts to Joan and Merwin Smith were discharged in the Prior Case.

On January 27, 2017, Smiths moved to amend their complaint, which was granted. Smiths filed their First Amended Complaint, ("FAC"), Dkt. 31, on January 30, 2017.  In addition to providing additional detail of the origin of their claims against Debtor and Gregory, Smiths repeated their claim for exception of their debt from Debtor's discharge under § 523(a)(2)(A) as Count One.  Smiths added to Count One, at paragraph 23, an alternative request, without citation to authority, that Julia's discharge in the Prior Case be revoked.  Smiths added a Count Two to the FAC in which they allege that Debtor's current Chapter 13 case is a continuation of the alleged fraud Debtor initiated when she and Gregory filed the Prior Case in 2012, which constitutes bad faith.  Count Two does not cite to any section of the Bankruptcy Code, but requests exception of Smiths' Debt from any discharge which might be entered in her pending Chapter 13 case.  On February 2, 2017, Debtor filed her answer to the FAC, including the prior affirmative defenses, and repeated and expanded on her two counterclaims.  Smiths filed their answer to the amended counterclaims on February 15, 2017, denying liability.

### D.  The Pending Motions.

Debtor filed her Dispositive Motions and the Objection, along with a separately filed a Statement of Uncontroverted Facts (Dkt. 43) accompanied by exhibits including a supporting affidavit of Julia Marion Wall (Dkt. 44) and supporting memorandum (Dkt. 45).  On February 24, 2017, Debtor filed a request for judicial notice of the case dockets of this adversary proceeding, the Prior Case and the New Case.  The Court granted Debtor's request and took judicial notice to the extent permitted by the rules.

Smiths filed a brief in opposition on March 15, 2017. However, Smiths did not file a "Statement of Genuine Issues" as required under Montana Local Bankruptcy Rule ("Mont. LBR") 7056-1(a)(2). On March 17, 2017, Smiths filed a "Statement of Uncontroverted Facts" but this statement fails to satisfy the requirement of Mont. LBR 7056-1(a)(2). Mont. LBR 7056-1(a)(2) requires the party opposing summary judgment to submit a "Statement of Genuine Issues" that it sets "forth the specific facts which the opposing party asserts establish a genuine issue of material fact precluding summary judgment in favor of the moving party."[6]

Mont. LBR 7056-1(a)(3) provides: "Facts Admitted. All material facts in the moving party's Statement of Uncontroverted Facts are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party." As a result of Smiths' failure to timely file a Statement of Genuine Issues, this Court deems the material facts in the Debtor's Statement of Uncontroverted Facts admitted.[7]

### DISCUSSION

The principal purpose of the Bankruptcy Code is to grant a "fresh start" to the "honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S.Ct. 1105, 1107, 166 L.Ed.2d 956 (2007); *Grogan v. Garner*, 498 U.S. 279, 286, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). As the Ninth Circuit Court of Appeals stated: "Because a fundamental policy of the Bankruptcy Code is to afford debtors a fresh start, 'exceptions to discharge should be strictly construed against an objecting creditor and in favor of the debtor.' *Snoke v. Riso (In re*

---

[6] Instead, Plaintiffs filed a total of 345 pages of Julia's deposition, state court pleadings, and other exhibits. Dkt. 64. This compilation of documents does not comply with Mont. LBR 7056-1(a)(2) and cannot be construed as a short concise statement of genuine issues.

[7] Resolution of the issues presented involves many facts that the Court can discern merely by looking at the filings in the Prior Case.

*Riso*), 978 F.2d 1151, 1154 (9th Cir.1992)." *In re Scheer*, 819 F.3d 1206, 1209 (9th Cir. 2016); *see also, In re Kidd*, 219 B.R. 278, 282, 16 Mont. B.R. 382, 386 (Bankr. D. Mont. 1998).

### A.   Rule 12(b)(6) Motion to Dismiss.

Debtor moves to dismiss Smiths' claims for relief under Rule 12(b)(6), contending that they fail to state a claim upon which relief can be granted.  Debtor argues that there is no allegation in the FAC that the Debtor obtained the loans from Joan and Merwin Smith through fraud or misrepresentation as required under § 523(a)(2)(A), and that the FAC shows the contrary, because Debtor voluntarily made payments to Smiths after her 2012 bankruptcy.  With regards to Smiths' citation to 11 U.S.C. § 727 in their brief opposing Summary Judgment, Debtor has argued that raising § 727 for the first time, long after the deadline to amend pleadings is inappropriate.  This Court agrees.  However, the Court has endeavored to address this new theory, despite its untimeliness.[8]

Smiths argue that their FAC contains sufficient factual matters which, accepted as true, state claims for relief that are plausible and therefore Debtor's Rule 12(b)(6) motion to dismiss should be denied.  Smiths are wrong.  The United States Supreme Court explained the applicable "plausibility standard" under Rule 12(b)(6) as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)].  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Ibid.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.*, at 557, 127 S.Ct. 1955 (brackets omitted).

---

[8] The Court has done so, because like the other claims it simply is not viable.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S.Ct. 1937, 1949-50 (2009); *see also*, *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1054-55 (9th Cir. 2011).

Later in *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014), quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011), the Ninth Circuit distilled prior decisions addressing *Iqbal*, into a two-step process for evaluating pleadings:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

Under this analysis, the Court disregards paragraphs 17 through 22 of the FAC since they are simply conclusory recitals of the elements of a fraud claim. The Court accepts the other factual allegations of the FAC as true, and in particular paragraphs 13, 16 and that part of the second paragraph 24[9] which alleges that Debtor induced Gregory to file the 2012 bankruptcy by promising to omit the Smith Debt from any consequence of the filing. Paragraphs 23 and the rest of the second paragraph 24 are disregarded as simply threadbare descriptions of Smiths' claims for fraud and bad faith.

Having identified the factual allegations that are entitled to be taken as true, the Court concludes that they do not plausibly suggest that Smiths are entitled to the relief requested. The legal theories are explicit or otherwise well pled, so for purposes of its analysis, the Court went to great lengths to give Smiths the benefit of the doubt on the facts and law, but ultimately, the facts are not disputed, and the legal issues are not novel. Simply put, the discharge Debtor received in 2012 voids the State Judgment. Smiths were enjoined by Julia's discharge in the

---

[9] The FAC contains two paragraphs 23, and two paragraphs 24.

Prior Case from commencing this adversary proceeding or filing a proof of claim, and Debtor is entitled to damages to be determined at a subsequent hearing.

1. **Count 1 is subject to dismissal for failure to state a claim because Smith has failed to state a claim that is plausible under 11 U.S.C. § 523(a)(2)(A) or 11 U.S.C.§ 727(d).**

   a. **11 USC § 523(a)(2)(A).**

Any claim under Count One by Smiths for exception of the Smith Debt from Julia's 2012 discharge under 11 U.S.C. § 523(a)(2)(A) is time barred.  Smith's received notices from the Clerk of Bankruptcy Court at the commencement of the Prior Case.  These Notices included deadlines to file complaints seeking exception of their claim from the debtors' discharge or objecting to discharge.  The notices were sent to Joan at Smiths' address of record.  In Smiths' opposition brief they admit receiving the notices and having actual knowledge of the 2012 bankruptcy case.  Under Rule 4007(c) Smiths had 60 days after the first date set for the meeting of creditors, until August 3, 2012, to file their complaint objecting to discharge under 11 U.S.C. § 523(a)(2)(A), or any other grounds.  Smiths did not request an extension of time, and they did not file a timely complaint seeking exception of their claims from Julia's discharge or objecting to discharge.

Since neither Smiths nor any other creditor objected to Julia's discharge, the discharge was entered after the 60 days expired on August 6, 2012.  Having failed to timely object to Julia's discharge in the Prior Case under 11 U.S.C. § 523(a)(2)(A), or any other grounds, Smiths cannot do so now, more than 4 years after the discharge was entered.  In *Taylor v. Freeland & Kronz*, 503 U.S. 638, 644, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992), the Supreme Court observed:  "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *See also In re Smith*, 235 F.3d 472, 476 (9th Cir. 2000).  A common maxim of

equity states: "The law aids the vigilant before those who sleep on their rights."  Montana Code Ann. § 1-3-218.  The unwelcome result for Smiths was the entry of a discharge in the Prior Case, which became final.  Smiths have failed to cite any authority upon which creditors with notice of a debtor's bankruptcy filings have been permitted to ignore the discharge objection deadline, and then 4 years later file an objection.  Thus, even if the Court accepts as true the allegation of the FAC, no plausible claim exists under § 523(a)(2)(A) for revisiting the 2012 discharge and excepting the Smith Debt from it.

### b.  11 U.S.C. § 727(d).

 Count One, at paragraph 23, seeks revocation of Julia's discharge in the Prior Case based on her alleged fraud.  Smiths cited no statutory authority in their FAC under which Julia's 2012 discharge may be entirely revoked.  However, in their brief Smiths cite § 727(d), where at subsection (d)(1) the court, after notice and a hearing, "shall revoke a discharge granted under subsection (a) of this section if – (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge."  Debtor moved to strike Smiths' reference to § 727(d) because it was first raised in their brief after the deadline expired for amendment of pleadings.

The Court agrees that Smiths' citation to § 727(d) was untimely raised under this Court's scheduling Order, but will address it nonetheless.  Per § 727(e), under the terms of which, any request for revocation of discharge must be made within the later of one year after the granting of such discharge, or the date the case was closed.  The discharge in the Prior Case was entered on August 6, 2012, and the case was closed on August 18, 2013[10].  Smiths did not file their complaint commencing the instant adversary proceeding until August 16, 2016, which is beyond

---

[10] Debtor's motion to reopen is pending and has not been granted.  The Court does not consider a possible reopening of a case to have the effect of rendering the deadlines of § 727(d) nugatory.

the deadlines delineated under § 727(d).  The Court finds and concludes that Smiths' request for

revocation of Debtor's discharge at paragraph 23 of Count One is wholly implausible because it

is barred by the applicable deadlines of § 727(d).  Thus, it fails to state a claim upon which relief

can be granted and will be dismissed.

### 2. Count 2 is subject to dismissal for failure to state a claim because Smith has failed to state a claim that is plausible under 11 U.S.C. § 523(a)(2)(A).

Count Two seeks exception of the Smith Debt under 11 U.S.C. § 523(a)(2)(A), from any

discharge entered in the New Case.[11]  Section 523(a)(2)(A) provides:

(a)    A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

The creditor bears the burden of proving § 523(a)(2)(A)'s applicability by a preponderance of the

elements.  *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010).  To do so

the creditor must show:

(1) the debtor made ... representations;
(2) the debtor knew were false when made;
(3) the debtor made the representations with the intention and purpose of deceiving the creditor;
(4) the creditor relied on such representations; and,
(5) the creditor sustained the alleged loss and damage as the proximate result of the misrepresentations having been made.

*Harmon v. Kobrin (In re Harmon) ("Harmon")*, 250 F.3d 1240, 1246 (9th Cir. 2001); *In re*

*Hashemi*, 104 F.3d 1122, 1125 (9th Cir. 1996), *cert. denied*, 520 U.S. 1230, 117 S.Ct. 1824, 137

L.Ed.2d 1031 (1997); *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009).

---

[11] See prayer for relief as to Count One.  Although not artful, the basis for this request appears to be the alleged fraud by Debtor that resulted in Gregory's agreement to go forward with the Prior Case.

A leading commentator writes:  "For a debt to fall within this exception, money, property, or services, or an extension, renewal or refinancing of credit must actually have been obtained by the false pretenses or representations or by means of actual fraud.  4 Alan N. Resnick & Henry J. Sommer, COLLIER ON BANKRUPTCY, ¶ 523.08[1][a] (16th ed. 2016).

Count Two seeking an exception to discharge for the Smith Debt in the New Case fails for the obvious reason that the debt was already discharged in the Prior Case.  However, even if that were not the case, Smiths' claim would still be subject to dismissal because the alleged representations upon which the Smiths' fraud claim are premised were made by Debtor in 2012, at least 6 or 7 years after the Smith Debt was incurred.  Smiths allege that Debtor falsely induced Gregory to file the Prior Case in 2012 by assuring him that the indebtedness to Smiths would not be included, or otherwise affected by the filing.  Even if that allegation is true, a claim under § 523(a)(2)(A) claim is not plausible because Debtor's alleged inducement representations were made long after she and Gregory became indebted to Smiths.

The FAC is devoid of allegations that Julia's statements in 2012 resulted in Debtor and Gregory's receipt of money, property, services, or an extension, renewal, or refinancing of credit.  Indeed, the FAC states that Debtor convinced Gregory to file a Chapter 7 petition in 2012, while they owed more than $175,000 to Smith "for the six years previously."  FAC, page 2, paragraph 7.  Taking this allegation as true, the Smith Debt incurred in 2005, was not "obtained by" Julia's alleged 2012 fraud as required under § 523(a)(2)(A).  There is no evidence of any extension, renewal or refinancing of the debt other than Smiths continuing to accept payments as Debtor and Gregory made them following the conclusion of the Prior Case.  Thus, even if the Court

accepts as true the allegation of the FAC, no plausible claim exists under 11 U.S.C. § 523(a)(2)(A) for excepting the Smith Debt from the discharge in the New Case.[12]

### 3. A claim by Smiths that the discharge in the Prior Case should be revoked because the Smith Debt was not scheduled is also subject to dismissal because Smiths admittedly had notice of the Prior Case.

A claim by Smiths that Julia's discharge in the Prior Case should be revoked on grounds of fraud, because she did not list the Smith Debt in her 2012 schedules nor list her payments to them in her SOFA, is also not plausible.  Although there is an exception to discharge in § 524(a)(3)(B) for certain debts which are not listed or scheduled, the rule is not absolute, as demonstrated by the plain language of its text.  Section 523(a)(3)(B) provides that a discharge does not discharge a debtor from any debt –

> (3) neither listed nor scheduled under section 521(a)(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—
>
> * * * *
>
> (B) if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, timely filing of a proof of claim and timely request for determination of dischargeability of such debt under one of such paragraphs, *unless such creditor had notice or actual knowledge of the case in time for such timely filing and request*.

523(a)(3)(B) (emphasis added).

The italicized language of § 523(a)(3)(b) renders Smiths' claims for relief not plausible.  The Ninth Circuit explained:

> Section 523(a)(3)(B) provides for the exception from discharge of certain debts— most notably, for purposes of this case, debts involving fraud on the part of the debtor—when those debts were not listed by the debtor in the schedule of creditors. The Bankruptcy Code and Rules treat these debts differently from debts of the same sort that have been properly scheduled. Specifically, § 523(a)(3)(B) creates a nondischargeability action for defrauded creditors who were neither listed nor scheduled and had no notice or actual knowledge of the case in time to permit the timely filing of a proof of claim or a timely request for a determination

---

[12] Noting in Count Two or paragraphs 27 and 28 can be construed as touching upon or implicating § 727(d).

of dischargeability. Section 523(c)(1), which provides for the possible exception from discharge of the same kinds of debts in cases of creditors who did receive timely notice, is subject to a time limit under Rule 4007(c). That Rule provides that a creditor has 60 days from the first date set for the creditors' meeting in which to file the nondischargeability complaint. By contrast, Rule 4007(b), which governs the timing of the commencement of § 523(a)(3)(B) complaints by unscheduled creditors, reads: "A complaint other than under § 523(c) may be filed at any time."

*In re Beaty*, 306 F.3d 914, 921-22 (9th Cir. 2002).

*Beaty* is a Ninth Circuit decision, which is controlling authority in this district. Because Joan was a scheduled creditor, the discharge exception of § 524(a)(3)(B) does not apply to the Smith Debt even though that debt was not scheduled. Joan was identified in Julia's 2012 Schedules as a creditor and received notice, and Smiths' FAC establishes that Joan had actual knowledge of Julia's 2012 bankruptcy proceeding. Smiths' brief admits that Merwin also knew. As creditors, Smiths were given notice and had actual knowledge of Julia's 2012 bankruptcy in time to file a proof or claim and/or a complaint to except their indebtedness from Julia's discharge, or object to her discharge. The fact that Debtor failed to specifically list the Smith Debt in her schedules did not relieve Smiths of their obligation to take timely action to protect their claim when they knew of Julia's bankruptcy, and other debts owed to them had been scheduled.

COLLIER ON BANKRUPTCY writes that the exception in § 523(a)(3) for creditors who do not receive notice of a bankruptcy but otherwise acquire actual knowledge has been consistently upheld against due process challenges. COLLIER ON BANKRUPTCY, ¶ 523.09[4][a]; s*ee, Lompa v. Price (In re Price),* 871 F.2d 97, 99 (9th Cir. 1989) ("The fact that Price failed to list Lompa as a creditor did not relieve Lompa of his obligation to take timely action to protect his claim…. In light of our determination that the appellant was on notice that Price had filed for bankruptcy relief, the appellant's due process argument is without merit."). Joan was listed as a creditor in

Julia's 2012 bankruptcy Schedules, and while the Smith Debt which Debtor and Gregory owed

her and Merwin Smith was not scheduled, that did not relieve Joan and Merwin Smith of their

obligation to protect their claim when they had notice and actual knowledge. *See, Price*, 871

F.2d at 99. Joan and Merwin Smith failed to file an adversary proceeding objecting to or seeking

an exception from Julia's discharge within the 60-day deadline in Rule 4007(c), and did not ask

for an extension. Smiths' claim against Debtor for the Smith Debt was discharged in the Prior

Case.

      **B.   Objection to Proof of Claim 6.**

      Debtor objects to Proof of Claim No. 6 filed by Smiths in her Chapter 13 case. Debtor

contends that Joan was listed on the creditor matrix in Case No. 12-60657-7 and was sent notice

of commencement of the case, deadlines, notice of the claims bar date, and was sent the

discharge of Julia's and Gregory's debts. Joan and Merwin Smith did not file a proof of claim in

the Prior Case and did not file a timely complaint seeking exception of their claim from Julia's

and Gregory's discharge. Therefore, Debtor argues, Joan and Merwin Smith had notice and

actual knowledge of the case and deadlines, and they had a duty to investigate their claims which

they failed to do, by not filing a proof of claim or a timely complaint objecting to discharge.

      With the deadlines having expired in the Prior Case, Debtor argues that Smiths were

enjoined by the discharge from seeking collection of their debts from her, but chose to ignore it;

and Smiths' filing of a proof of claim in this Chapter 13 case violated the discharge injunction.

In addition, Debtor contends that Joan attended the 341 meeting in Case No. 16-60490-13 and

was informed that Smiths' were seeking to collect a discharged debt in violation of the discharge

injunction, but despite being warned Smiths filed Proof of Claim No. 6. Debtor requests that her

Objection be sustained and Claim 6 be disallowed based upon Smiths' violation of the discharge

injunction.

Smiths filed Proof of Claim No. 6 asserting an unsecured nonpriority claim in the amount of $88,832.57. Smiths' attached to Claim 6 a copy of the order and judgment entered in the state court action No. DV-13-371. That order and judgment explains that Smiths' claims are based on debts owed by Debtor and Gregory from the year 2005. This Court discussed the applicable law governing the burden of proof for allowance of claims in *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):

> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.

> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.

> \* \* \* \*

> "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)).

The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

The analysis under *Lundell v. Anchor Const. Specialists* was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002).

Thus, Smiths' Proof of Claim No. 6 is *prima facie* evidence of the validity and amount of their claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039, quoting *Holm*. This Court finds that the Debtor, as the objecting party, has produced sufficient evidence to cause the burden to revert to the Smiths to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226). They cannot do so.

As discussed in the preceding section above on Debtor's Motion to Dismiss for failure to state a claim, Smiths' claims for indebtedness incurred in 2005 and before, were discharged in Debtor's 2012 bankruptcy, in which Joan and Merwin failed to protect their rights, despite having notice of the case. The discharge of § 524(a)(2) enjoined any act to collect or recover such debt as a personal liability of the Debtor. In other words Smiths were enjoined from filing a claim in Debtor's instant Chapter 13 case. Smiths filed Proof of Claim 6 anyway.

The term "debt" means "liability on a claim." 11 U.S.C. § 101(12). "Claim" means "right to payment ...." § 101(5). Based on the discharge injunction of § 524(a)(2), the Debtor no longer had personal liability for Smiths' claim, and Smiths no longer had a right to payment. *See, Johnson v. Home State Bank*, 501 U.S. at 84. The Court sustains Debtor's Objection and disallows Proof of Claim 6.

Smiths were served with the discharge at their address of record. Section 524(a)(1) describes the "Effect of Discharge" as a discharge "(1) voids any judgment at any time obtained,

to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 1228, or 1328 of this title, whether or not discharge of such debt was waived[.]"  This broad language of § 524(a)(1) voids the judgment which Smiths obtained after the 2012 discharge in the state court action No. DV-13-371, which Smiths pursued to collect the indebtedness owed by Debtor and Gregory since 2005.

Further, the 2012 discharge under § 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."  *In re Ellett*, 254 F.3d 1135, 1148 (9th Cir. 2001), *cert. denied*, 534 U.S. 1127, 122 S.Ct. 1064, 151 L.Ed.2d 968 (2002). Section 524 implements the concept of discharge by enjoining a party from seeking to collect a debt as a personal liability of the debtor.  *Lone Star Security & Video, Inc. v. Gurrola*, 328 B.R. 158, 174 (9th Cir. BAP 2005).  The United States Supreme Court wrote that a bankruptcy discharge "extinguishes" an action against the debtor *in personam* as a means of enforcing a claim.  *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66, 84 (1991); *see, In re Crocker*, 20 Mont. B.R. 371, 390 (Bankr. D. Mont. 2003).  Thus, any state law remedy of Smiths  to collect their indebtedness based on an action against Debtor *in personam* was extinguished under *Johnson v. Home State Bank* and enjoined by § 524(a)(2).

### C.  Motion for Summary Judgment.

Debtor moves for summary judgment on her first and second counterclaims which allege that Smiths violated the discharge injunction.  Summary judgment is governed by F.R.B.P. 7056. Rule 7056, incorporating Rule 56(c), Fed. R. Civ. P., states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

22

and that the moving party is entitled to judgment as a matter of law."  "The proponent of a summary judgment motion bears a heavy burden to show that there are no disputed facts warranting disposition of the case on the law without trial."  *Younie v. Gonya (In re Younie)*, 211 B.R. 367, 373 (9th Cir. BAP 1997) (*quoting In re Aquaslide "N" Dive Corp.*, 85 B.R. 545, 547 (9th Cir. BAP 1987)).  Once that burden has been met, "the opponent must affirmatively show that a material issue of fact remains in dispute."  *Frederick S. Wyle P.C. v. Texaco, Inc.*, 764 F.2d 604, 608 (9th Cir. 1985).  That is, the opponent cannot assert the "mere existence of some alleged factual dispute between the parties." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  Instead, to demonstrate that a genuine factual issue exists, the objector must produce affidavits which are based on personal knowledge and the facts set forth therein must be admissible in evidence.  *Aquaslide*, 85 B.R. at 547.

The moving party must initially identify those portions of the record before the Court which it believes establish an absence of material fact.  *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  If the moving party adequately carries its burden, the party opposing summary judgment must then "set forth specific facts showing that there is a genuine issue for trial." *Kaiser Cement Corp. v. Fischback & Moore, Inc.*, 793 F.2d 1100, 1103-04 (9th Cir. 1986), *cert. denied*, 469 U.S. 949 (1986).

If a rational trier of fact might resolve disputes raised during summary judgment proceedings in favor of the nonmoving party, summary judgment must be denied.  *T.W. Elec. Serv.*, 809 F.2d at 630; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 202 (1986).  Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, viewed along with the undisputed

23

background or contextual facts, are such that a rational or reasonable jury might return a verdict

in its favor based on that evidence.  *T.W. Elec. Serv.*, 809 F.2d at 631.

The Debtor filed a Statement of Uncontroverted Facts in support of her Motion for

Summary Judgment.  Debtor's Statement sets forth the following twenty-one (21) alleged

Uncontroverted Facts:

1. Defendant is the Debtor in an active Chapter 13 Case No. 16-60490, as well as the Defendant in Adv. Proc. No. 16-00050.

2. In 2005 Gregory and Julia Wall requested financial assistance from Joan and Merwin Smith to purchase a mobile home and that nine months later, they requested additional financial assistance to acquire a parcel of land in the Bitterroot Valley. (Adv. Proc. No. 16-00050, Docket No. 29-1, pages 4-5, paragraph 11, attached as Exhibit A).

3. On June 1, 2005 Defendant Wall signed a promissory note promising to pay $125,000.00 which reflected the sums that had been loaned to her and her then husband Gregory Wall (one of the Plaintiffs in this Adversary Proceeding and the son of Joan Smith) by Joan and Merwin Smith up to that point. *Id.*

4. Subsequent to the executed Promissory Note, in late 2005 or early 2006, Joan and Merwin Smith provided additional funds to Defendant and Gregory Wall in the sum of $40,000.00 to further assist them in their relocation. *Id.*

5. Gregory and Julia Wall made payments monthly on this indebtedness from February 2006 through at least March 2012 *Id.* (Although probably not a critical fact, there is evidence of payments from Julie Wall to Joan Smith even as late as July 2012, *see* Exhibit L, attached to the Affidavit of Julia Wall).

6. Defendant, along with her then spouse Gregory Wall, on April 26, 2012, filed a voluntary Chapter 7 bankruptcy petition and schedules in the United States Bankruptcy Court for the District of Montana that was assigned case number 12-60657 (hereinafter "Wall 2012 Bankruptcy"). On April 28, 2012 the Bankruptcy Noticing Center served the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Notice on all creditors listed on the Wall 2012 Bankruptcy creditor matrix. (Case 12-60657, Docket No. 4, Attached as Exhibit B).

7. Joan Smith was listed on the creditor matrix and on page 3 of Exhibit B, Joan Smith is listed on the Certificate of Notice at 175 Orr Loop Road, Darby, MT 59829. *Id.* at page 3.

8.  Joan Smith and Merwin Smith admit that they had notice of the Wall 2012 Bankruptcy. (See Brief in Support of Motion for Leave to File Amended Complaint, Adv. Proc. No. 16-00050, Docket No. 29-2, page 3, attached as Exhibit C). The Smiths were "concerned that the indebtedness to Smiths, which was the largest single debt owed by Julia and Greg would be discharged." *Id.* (there appears to be typos in Exhibit C where Merwin Smith is referred to as Marilyn Smith in a couple of instances and at one point, Joan Smith is referred to as John Smith, see Exhibit C, pages 3 and 4).

9.  Plaintiffs Joan Smith and Estate of Merwin Smith in their pleadings have repeatedly admitted that they had notice of the Wall 2012 bankruptcy (Adv. Proc. No. 16-00050, Dockets No. 26-28), most recently in their Reply/Response to Amended Counterclaims. (Adv. Proc. No. 16-00050, Docket No. 40, page 3, paragraph 14, attached as Exhibit D).

10. In the Wall 2012 Bankruptcy, on June 5, 2012, the Chapter 7 Trustee issued a Notice to File Proofs of Claim. On June 7, 2012, the Bankruptcy Noticing Center served this notice to the Wall Creditors listed on the matrix. (Case 12-60657, Docket No. 7, Attached as Exhibit E).

11. On page 3 of Exhibit E, Joan Smith is listed on the Certificate of Notice at 175 Orr Loop Road, Darby, MT 59829. *Id.* at page 3.

12. In the Wall 2012 Bankruptcy, on August 6, 2012, this Court entered a Discharge of Joint Debtors. On August 8, 2012, the Bankruptcy Noticing Center Certificate of Service of the Discharge of Joint Debtors was served on the Wall creditors listed on the creditor matrix.  (Case 12-60657, Docket No. 11, Attached as Exhibit F).

13. On page 3 of Exhibit D, Joan Smith is listed on the Certificate of Notice at 175 Orr Loop Road, Darby, MT 59829. *Id.* at page 3.

14. Thereafter, Plaintiffs Joan Smith and Merwin Smith or his estate, retained the services of Howard Toole, Esq. to pursue collection of the discharged debt. A complaint was filed in the Montana Twenty-First Judicial District Court in Case No. DV-13-371. This litigation resulted in an Order and Judgment issued on April 4, 2016, a copy of which was submitted as an attachment to the proof of claim filed by Joan Smith and the Estate of Merwin Smith on August 15, 2016. (Case No. 16-60490, Proof of Claim 6, and its attachment, attached as Exhibit G).

15. On May 13, 2016, Defendant's wages were garnished by Joan Smith and the Estate of Merwin Smith in the amount of $261.05. (Attached as Exhibit H).

16. On May 23, 2016, Defendant filed the underlying voluntary Chapter 13 case. Joan Smith and the Estate of Merwin Smith were listed as a disputed debt and appeared on the creditor matrix at 175 Orr Loop Road, Darby, MT 59829. (Case No. 16-60490, Bankruptcy Noticing Center, Certificate of Service, Docket No. 11, attached as Exhibit I).

17. The Meeting of Creditors was set in Case No. 16-60490 for June 16, 2016. *Id.*

18. Joan Smith and her attorney Howard Toole attended and participated in the Meeting of Creditors and at that time were informed by undersigned counsel the assertion that the debt they were seeking to collect was discharged in the Wall 2012 Bankruptcy and that they were violating the discharge injunction. (See Partial Transcript of 341 Meeting of Creditors, page 4, attached as Exhibit J.)

19. On August 15, 2016, Joan Smith and the Estate of Merwin Smith subsequently filed a proof of claim in Case No. 16-60490. (See Claim 6, attached as Exhibit G).

20. On August 15, 2016, Joan Smith and the Estate of Merwin Smith and Gregory Wall initiated this adversary proceeding. (Adv. Proc. No. 16-00050, Docket No. 23).

21. Undersigned counsel provided additional notice to Joan Smith and the Estate of Merwin Smith, as well as their counsel, that it was Defendant's belief that filing the proof of claim and initiating the adversary proceeding were violations of the discharge injunction received in the Wall 2012 Bankruptcy and urged them to seek the advice of experienced bankruptcy counsel before proceeding. (See Defendant's Response to Smiths' Motion Regarding Dismissal and Motion to Quash Service of Process, Adv. Proc. No. 16-00050, Docket No. 9, page 3, attached as Exhibit K).

Dkt. 43.

Debtor's attorney served her Statement of Uncontroverted Facts on Plaintiff's attorney electronically through this Court's electronic case filing ("ECF") system. Mont. LBR 7056-1(a) provides:

(2) **Statement of Genuine Issues**.  Opposition to a motion for summary judgment, if any, must be filed within fourteen (14) days) after the motion is served and must comply with Mont. LBR 9013-1.  A separately identified, short, and concise "Statement of Genuine Issues", setting forth the specific facts which the opposing party asserts establish a genuine issue of material fact precluding summary judgment in favor of the moving party, must be filed by the party

opposing the motion together with an opposition brief.

(3) **Facts Admitted**.  All material facts in the moving party's Statement of Genuine Issues are deemed to be admitted unless controverted by a Statement of Genuine Issues filed by the opposing party.

As discussed above, Smiths failed to timely file a Statement of Genuine Issues setting forth specific facts which they asset establish a genuine issue of material fact precluding summary judgment.  Instead, 21 days after Debtor filed her Statement of Uncontroverted Facts Smiths filed 345 pages consisting of Debtor's deposition and deposition exhibits, discovery responses, and bankruptcy documents, much of which this Court has already taken judicial notice of.  One day later Smiths filed a pleading denominated as "Statement of Uncontroverted Facts" which includes fourteen numbered facts repeating the history of the loans between the parties, the divorce, and Debtor's bankruptcy cases.

Debtor argues that there are no genuine issues of material fact with respect to her two counterclaims against Smiths for violation of the discharge injunction because the loans to Debtor and Gregory by Joan and Merwin Smith took place in 2005 and 2006.  She objects to Smiths' use of her deposition because it was filed late and is mischaracterized by Plaintiffs. Debtor contends that Joan was listed on the creditor matrix in the Prior Case and was sent notice of commencement of the case, deadlines, notice of the claims bar date, and was sent the discharge of Julia's and Gregory's debts.  Joan and Merwin Smith did not file a proof of claim in the Prior Case and did not file a timely complaint seeking exception of their claim from Julia's and Gregory's discharge.  Therefore, Debtor argues, Joan and Merwin Smith had notice and actual knowledge of the case and deadlines, and they had a duty to investigate their claims which they failed to do as evidenced by their failure to file a proof of claim or a timely dischargeability complaint.

With the deadlines having expired in the Prior Case and entry of a discharge, Debtor argues, Smiths were enjoined by the discharge from seeking collection of their debts from her but chose to ignore it; and Smiths' filing of a Proof of Claim in this Chapter 13 case and their filing this adversary proceeding[13] against Debtor seeking exception from discharge and revocation of her discharge violated the discharge injunction and entitle Debtor to damages and attorney's fees.  Debtor requests summary judgment on her first counterclaim to void Smiths' state court collection actions.

As for Debtor's second counterclaim, she argues that Joan attended the § 341 meeting of creditors in Case No. 16-60490 and was informed that Smiths  were seeking to collect a discharged debt in violation of the discharge injunction, but despite being warned Smiths filed their Proof of Claim No. 6 and commenced this adversary proceeding.  Debtor requests summary judgment on her counterclaims and that a hearing be held on the amount of damages and attorney's fee and costs to be awarded to Debtor based upon Smiths' violations of the discharge injunction.

Smiths do not dispute that they were on the creditor matrix and received notice of the Prior Case, and "were aware of" and "not surprised" by Julia's and Gregory's 2012 bankruptcy.[14] Notwithstanding this concession, Smiths argue that Debtor's fraud and omissions in her 2012 bankruptcy schedules and SOFA of debts and payments to Smiths, arguably constitute perjury and fatally impair her counterclaims.  Smiths' further argue that Julia's failure to assert the discharge as a defense in her divorce case and Smiths' state court collection action is indicia of

---

[13] This is a change from Debtor's counterclaims in her amended answer.  Debtor's first counterclaim seeks damages from Plaintiffs for pursuing the state court collection action.  Debtor's reply changed her first counterclaim for damages to Smiths' commencement of this adversary proceeding.  The deadline for amending the pleadings set by this Court's Scheduling Order, Dkt. 24, expired on January 27, 2017, and applied to all parties.

[14] Smiths' brief, Dkt. , at pp. 9-10, 11.  These admission are important because the notices in the 2012 bankruptcy were sent to Joan Smith, not to Merwin, albeit at the same address.  These admissions by Smiths' counsel establish that Merwin as well as Joan Smith had notice and actual knowledge of the 2012 bankruptcy case and deadlines.

no damages, and evidence that the Debtor believed that the Smith Debt was not discharged. They characterize Julia's argument that she is entitled to damages on her counterclaims as "ludicrous."

After review of the parties' Statements and supporting documents, and the matters of which this Court has taken judicial notice, the Court concludes that the Debtor satisfied her burden to show that there is no genuine issue of material fact.  The Debtor is entitled to summary judgment as a matter of law based on the facts all the parties recite, i.e., that Joan received notice of  the Prior Case and deadlines; that Smiths did not protect their rights in the Prior Case by filing a timely complaint objecting to or for revocation of Debtor's discharge, or for exception of their claim from her discharge; and that a discharge was entered in the Prior Case and mailed to Joan and therefore that Joan and Merwin Smith had notice and actual knowledge of the discharge.

Smiths' "Statement of Uncontroverted Facts" was untimely, and it did not satisfy the requirement of Mont. LBR 7056-1(a)(2) for a "Statement of Genuine Issues" which establish a genuine issue of material fact.  Credibility is not at issue with respect to Debtor's counterclaims because of the uncontroverted facts of notice, Smiths' knowledge of the 2012 discharge, and subsequent violations of it.  In this Court's view there are no facts upon which a rational and reasonable finder of fact could return a verdict in the Smiths' favor given the law governing discharge.  *T.W. Elec. Serv.*, 809 F.2d at 630.

A discharge under § 524(a)(2) "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor...." *Ellett*, 254 F.3d at 1148.  "A party who knowingly violates the discharge injunction [of § 524(a)(2) ] can be held in contempt under [§ ]

29

105(a) of the [B]ankruptcy [C]ode." *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.),* 450 F.3d 996,

1007 (9th Cir.2006), citing *Renwick v. Bennett (In re Bennett),* 298 F.3d 1059, 1069 (9th

Cir.2002), and *Walls v. Wells Fargo Bank, N.A.,* 276 F.3d 502, 507 (9th Cir.2002).  In other

words, a "willful" violation of the discharge injunction can be the basis for a finding of civil

contempt, and the imposition of appropriate sanctions under § 105(a). *In re Dyer*, 322 F.3d 1178,

1191 (9th Cir.2003).  The court's contempt authority under § 105(a) is only a civil contempt

authority and allows only for civil sanctions as the appropriate remedy.  *Dyer,* 322 F.3d at 1192

(considering contempt sanctions in context of stay violation).  "Civil penalties must either be

compensatory or designed to coerce compliance.  *Id*., citing *F.J. Hanshaw Enters., Inc. v.

Emerald River Dev., Inc.,* 244 F.3d 1128, 1137–38 (9th Cir.2001).  For a discharge violation,

"compensatory civil contempt allows an aggrieved debtor to obtain compensatory damages,

attorney's fees, and the offending creditor's compliance with the discharge injunction."  *Walls*,

276 F.3d at 507.

 To be subject to sanctions for violating the discharge injunction, the alleged contemnor's

violation of the discharge injunction must be "willful."  Under Ninth Circuit law, a violation of

the discharge injunction is willful when the alleged contemnor (1) knew that the discharge

injunction applied, and (2) intended the actions that violated the discharge injunction.  *In re

Zilog, Inc.,* 450 F.3d at 1007; *Hardy v. United States (In re Hardy),* 97 F.3d 1384, 1390 (9th

Cir.1996).  The burden of proof on the issue of willfullness is clear and convincing evidence.  *In

re Zilog, Inc*., 450 F.3d at 1007; *Renwick v. Bennett (In re Bennett),* 298 F.3d 1059, 1069 (9th

Cir.2002) ("The moving party has the burden of showing by clear and convincing evidence that

the contemnors violated a specific and definite order of the court.").

 The BAP in *Gurrola* explained the burden of proof in cases involving automatic stay

30

violations and discharge injunction violations:

> We must emphatically reject Lone Star's position that it was entitled to enforce its judgment until such time as the bankruptcy court issued an order barring collection activity.
>
> To the contrary, a creditor has a *duty* to obey the discharge injunction, which duty is a modern corollary of the venerable rule that "all persons concerned in executing [void] judgments . . . are considered in law as trespassers." [*Elliott v. Peirsol*, 26 U.S. 328, 340, 7 L.Ed. 154 (1828)] *cited with approval* [*Kalb v. Feuerstein*, 308 U.S. 433, 439, 60 S.Ct. 343, 84 L.Ed. 370 (1940)].
>
> Moreover, there is no merit in Lone Star's position that the discharged debtor was obliged to take the initiative to clarify the discharge issue: "if Mr. Gurrola believed his bankruptcy immunized him from enforcement of the judgment, then he should" obtain an order from the bankruptcy court to that effect. Such an order already existed in the form of the discharge order, with its statutory injunction enforceable by contempt proceedings.

*Gurrola*, 328 B.R. at 174-75.

Smiths had notice and actual knowledge of Julia's and Gregory's 2012 bankruptcy case. Notices of the case, claims bar date, and the discharge were mailed to their home, and Smiths admit they had notice and actual knowledge. With notice and actual knowledge of the discharge, the uncontroverted evidence clearly shows that Smiths knowingly and intentionally commenced the state court collection action against the Debtor to collect a debt after entry of the discharge, which they knew or should have known applied, and obtained a judgment against the Debtor. *See, id.*

> The BAP wrote in *Gurrola*:
>
> Lone Star's position is remarkably similar to that of the automatic stay violator we encountered in *Morris v. Peralta*, 317 B.R. 381, 389 (9th Cir. BAP 2004), who thought that he could safely quibble with a debtor about the automatic stay. We held that debtors do not bear the burden of proving to creditors the existence of the automatic stay before stay-violation liability can be imposed. *Id.* at 389. The same basic analysis applies to the discharge and the discharge injunction.
>
> As with the § 362 automatic stay, the § 524(a) discharge and the discharge injunction are effective against the world to the full extent of their statutory terms,

> regardless of notice. Although the discharge and discharge injunction differ from the automatic stay in the sense that the protection is limited to the personal liability of the debtor and does not, for example, affect valid prepetition liens, these are distinctions without a difference with respect to the effect on creditors. [citing cases].

*Gurrola*, 328 B.R. at 175.

Under the preceding authority, Debtor did not have the burden of proving to Smiths the existence of the discharge injunction or to persuade them that the discharge applied and enjoined their state court collection action or their filing of a proof of claim. Debtor's attorney warned Joan at the meeting of creditors that her debt was discharged, but Smiths proceeded to file Proof of Claim No. 6 notwithstanding his warning.

As a result, Smiths' state court collection action and judgment against the Debtor was void ab initio because they were in violation of the discharge injunction of § 524(a)(1), just as violations of the automatic stay are void ab initio. *Gurrola*, 328 B.R. at 175 (citing cases). Although void, Debtor suffered damages as a result of Smiths' violations of the discharge injunction, including Smiths' garnishment of Debtor's wages and possible adverse credit rating from the judgment. Debtor is entitled to recover damages and attorney fees. *Walls*, 276 F.3d at 507.

"[C]ompensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorneys fees, and the offending creditor's compliance with the discharge injunction." *Walls*, 276 F.3d at 507; *Crocker*, 20 Mont. B.R. at 387-88. Debtor requests damages including attorney's fees and an award for emotional distress and punitive damages. This Court can impose upon a creditor who violates the § 524(a)(2) injunction sanctions for civil contempt, which may consist of remedial and compensatory, but not punitive, sanctions. *Jarvar v. Title Cash of Mont. Inc. (In re Jarvar)*, 422 B.R. 242, 250 (Bankr. D. Mont. 2009), citing *In re*

*Andrus*, 184 B.R. 311, 315 (Bankr. N.D. Ill. 1995).  Thus, the Debtor will be allowed a trial to offer evidence to establish her damages sought from Plaintiffs, but not an award of punitive damages which are not available for violation of the discharge injunction.  *Id.*  After the trial the Court will grant Debtor's attorney time to file an affidavit of attorney's fees and costs incurred with respect to this adversary proceeding and Debtor's Objection to Proof of Claim 6, and will give Smiths an opportunity to respond and request a hearing on the reasonableness of Debtor's request for attorney's fees.

## CONCLUSIONS OF LAW

1.  This Court has jurisdiction of this Chapter 13 case under 28 U.S.C. § 1334(a), and has jurisdiction of this adversary proceeding under § 1334(b).

2.  Debtor's Motions to Dismiss and for Summary Judgment, and Debtor's Objection to Smiths' Proof of Claim based on violation of the discharge injunction of 11 U.S.C. § 524(a)(2), are core proceedings under 28 U.S.C. § 157(b)(2).

3.  Debtor satisfied her burden of proof to show that Smiths knowingly violated the bankruptcy discharge injunction of 11 U.S.C. § 524(b) when they filed a complaint in in state court and obtained a judgment against the Debtor after entry of a discharge, after receiving notice and having actual knowledge of the bankruptcy case and discharge, and when they filed Proof of Claim No. 6 seeking allowance of a discharged claim.  The judgment is void and Proof of Claim No. 6 filed by Smiths is disallowed.

4.  Debtor satisfied her burden to show that Smiths' Counts One and Two of their FAC are not plausible because of the discharge; and therefore Counts One and Two fail to state a claim upon which relief can be granted under Rule 12(b)(6).

5.  Smiths are in contempt for violation of the discharge injunction of 11 U.S.C. § 524(b).

**IT IS ORDERED** separate Orders shall be entered in the above-captioned Chapter 13 case sustaining the Debtor's Objection and disallowing Proof of Claim No. 6 filed by Plaintiffs; granting Debtor's Motion to Dismiss Smiths' claims for relief averred in the FAC; granting Debtor's Motion for Summary Judgment against Smiths on liability for willful and knowing violation of the discharge injunction of § 524(a); voiding the state court judgment in Cause No. DV-13-371; and scheduling trial at a future date on the amount of damages Debtor incurred to be awarded against Smiths for their violations of the discharge injunction.

Honorable Benjamin P. Hursh
U.S. Bankruptcy Judge